Jerome BROWN, Plaintiff–Appellant,

v.

ABF FREIGHT SYSTEMS, INCORPO-
RATED, Defendant–Appellee.

No. 98–1354.

United States Court of Appeals,
Fourth Circuit.

Argued: June 8, 1999.

Decided: July 13, 1999.

**ARGUED:** Thomas Hunt Roberts, Thomas H. Roberts & Associates, P.C., Richmond, Virginia, for Appellant. Blackwell Nixon Shelley, Jr., Butler, Macon, Williams & Pantele, P.C., Richmond, Virginia, for Appellee. **ON BRIEF:** Amy L. Marshall, Thomas H. Roberts & Associates, P.C., Richmond, Virginia, for Appellant. Floyd William Kirby, Jr., Davis & Kirby, Richmond, Virginia, for Appellee.

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

Reversed by published opinion. Judge LUTTIG wrote the opinion, in which Judge MURNAGHAN and Judge DIANA GRIBBON MOTZ joined.

## OPINION

LUTTIG, Circuit Judge:

Appellant Jerome Brown challenges the federal district court's order requiring him to submit his Americans with Disabilities Act claim against his former employer, ABF Freight Systems, Inc., to binding arbitration. Because we conclude that the collective-bargaining agreement in question does not clearly and unmistakably require the arbitration of statutory discrimination claims, we reverse the judgment of the district court.

### I.

On April 21, 1997, plaintiff Jerome Brown, a commercial truck driver suffering from diabetes, filed a complaint in the United States District Court for the Eastern District of Virginia alleging that ABF Freight Systems, Inc. ("ABF") violated both the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and the Virginians with Disabilities Act, Va.Code §§ 51.5–40 *et seq.*, when it informed him that it would no longer accept his bids for yard and dock jobs. In its answer, ABF argued that its collective-bargaining agreement ("CBA") with Brown's union, the International Brotherhood of Teamsters, divested the district court of jurisdiction and required submittal of Brown's ADA claim to arbitration pursuant to procedures outlined in that agreement.

The parties do not dispute that at all times relevant to this appeal, Brown's employment with ABF was governed by a collective-bargaining agreement entered into by the IBT and ABF. Article 37 of that CBA, entitled the "Nondiscrimination" clause, provides that:

> The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin or engage in any other discriminatory acts prohibited by law. This Article also covers employees with a qualified disability under the Americans with Disabilities Act.

Article 8 of the CBA sets out, in considerable detail, the "National Grievance Procedure." Section 1 of that Article establishes the scope of arbitral matters by providing that:

> All grievances or questions of interpretation arising under this National Master Freight Agreement or Supplemental Agreements thereto shall be processed as set forth below.

In considering whether the CBA required arbitration of Brown's ADA claim, the district court was guided in its analysis by our holding in *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996), that a collective-bargaining agreement requiring arbitration of a union member's statutory discrimination claims is enforceable, and our further explanation in *Brown v. Trans World Airlines,* 127 F.3d 337 (4th Cir.1997), that the question of whether a particular CBA requires arbitration of such disputes is one of contract law. In light of these decisions, the district court held that the CBA, with its "general agreement" in Article 37 "not to perform any act violative of any anti discrimination law" and its submittal in Article 1 of "all grievances... arising under this... Agreement" to arbitration, compelled arbitration of Brown's statutory claim, and dismissed the complaint. Brown appeals.

### II.

■ Appellant argues that the collective-bargaining agreement between his un-

ion and his employer does not waive his right to a federal forum for his ADA claim, and that indeed the union is powerless to effectuate such a prospective waiver on his behalf. Although our caselaw squarely forecloses his second contention, we agree with Brown with respect to his first, and therefore reverse the judgment of the district court.

In reviewing Brown's claims, we write on a slate that is far from clean. After Brown had filed a timely notice of appeal and an opening brief in this court, we held the case in abeyance pending the Supreme Court's review of our decision in *Universal Maritime Serv. Corp. v. Wright*, 155 F.3d 311 (4th Cir.1998). In *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), the Court established that a union–negotiated waiver of employees' right to a federal judicial forum for statutory employment-discrimination claims must be clear and unmistakable. *Id.* at 397. Because the asserted waiver did not meet that standard, the Court expressly declined to reach the question whether even a waiver that did would be enforceable. *Id.* In addition, after briefing in this appeal was completed—but before oral argument was heard—we applied the *Universal Maritime* standard in *Carson v. Giant Food, Inc.*, 175 F.3d 325 (4th Cir.1999), concluding that under the Supreme Court's newly-announced standard the CBA in question did not compel arbitration of appellee's statutory discrimination claims. It is with the benefit of the decisions in these two recent cases, *Universal Maritime* and *Carson*, that we consider this appeal.

Although the Supreme Court in *Universal Maritime* reserved the question whether a 'union-negotiated waiver of the statutory right to a federal forum can ever be enforceable, we have answered that question—both before that decision and since—in the affirmative. *See Austin*, 78 F.3d at 885; *Carson*, 175 F.3d 325, 330. Thus, our task today is limited to determining whether the particular CBA in this case effectuates such a waiver. Before *Universal Maritime*, we may well have concluded that it does. In the face of that binding precedent, however, we are constrained to conclude that it does not.

█ The question whether the parties to a CBA agreed to arbitrate discrimination claims arising under the ADA—or any other federal statutory antidiscrimination law—is one of contract interpretation. *Universal Maritime*, 119 S.Ct. at 396. In making that determination, however, we do not apply the usual interpretive presumption in favor of arbitration. *Id.* Rather, under the rule of *Universal Maritime*, we will not find an intent to arbitrate statutory claims absent a "clear and unmistakable" waiver of an employee's "statutory right to a judicial forum for claims of employment discrimination." *Id.*

In *Carson*, a panel of this court explained that the requirement of a "clear and unmistakable" waiver can be satisfied through two possible means. First, and most obviously, such intent can be demonstrated through the drafting of an "explicit arbitration clause" pursuant to which the union agrees to submit all statutory employment-discrimination claims to arbitration. *Carson*, 175 F.3d 325, 331. Second, where the arbitration clause is "not so clear," employees might yet be bound to arbitrate their federal claims if "another provision, like a nondiscrimination clause, makes it *unmistakably clear* that the discrimination statutes at issue are part of the agreement." *Carson*, 175 F.3d 325, 331 (emphasis added).

With respect to the first of these means, there is no doubt that the arbitration clause contained in Article 37 of the CBA in this case is insufficiently explicit to pass muster under *Universal Maritime*. The clause, like that at issue in *Carson*, is a standard one, submitting to arbitration "all grievances or questions of interpretation arising under... this Agreement." Because the arbitration clause refers only to grievances arising under the Agreement, it cannot be read to require arbitration of

**322**

those grievances arising out of alleged statutory violations. The teaching of *Universal Maritime* is that where the parties to a CBA intend to waive the employees' right to a federal forum, such "broad but nonspecific language" in a general arbitration clause, standing alone, will not do the trick. *Carson,* 175 F.3d 325, 331.

■ Under *Carson*'s second means, however, even such a "broad but nonspecific" arbitration clause may nonetheless require arbitration of statutory discrimination claims if another provision of the agreement has established with the "requisite degree of clarity" that the "discrimination statute[ ] at issue is part of the agreement." *Id.* Because the only provision that might even arguably qualify—Article 37, the nondiscrimination clause—does not make it "unmistakably clear" that it is incorporating federal statutory employment discrimination law, we hold that the argument grounded in this alternative of *Carson* is also unavailing.

Article 37 begins with an explicit agreement between the Employer and the Union that neither will discriminate against any individual "with respect to hiring, compensation, terms or conditions of employment" or "limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities" because of that individual's "race, color, religion, sex, age, or national origin." While the language of this contractual agreement not to discriminate on certain specified bases in certain specified ways may parallel, or even parrot, the language of federal antidiscrimination statutes and prohibit some of the same conduct, *compare, e.g.,* 42 U.S.C. § 2000e–2(a), none of those statutes is thereby explicitly *incor-porated* into the agreement, by reference or otherwise. As a result, the contractual rights the agreement creates "cannot be said to be congruent with," *Brown,* 127 F.3d at 342, those established by statute or common law, and an arbitrator in interpreting the scope of those rights pursuant to the general arbitration clause will be bound to interpret the explicit terms of the agreement rather than of any federal statutory antidiscrimination law.

ABF argues that the catch-all concluding clause of the first sentence of Article 37, by which the Employer and Union agree not to "engage in any other discriminatory acts prohibited by law," constitutes the explicit incorporation of federal statutory discrimination law contemplated by *Carson.* We disagree. There is a significant difference, and we believe a legally dispositive one, between an agreement not to commit discriminatory acts that are prohibited by law and an agreement to incorporate, in toto, the antidiscrimination statutes that prohibit those acts. We believe that where a party seeks to base its claim of waiver of the right to a federal forum on a claim of "explicit incorporation," *Universal Maritime,* 119 S.Ct. at 396; *Carson,* 1999 WL 254438, *8, of the relevant federal antidiscrimination statute into the terms of the CBA, a simple agreement not to engage in acts violative of that statute (which, it bears noting, would be significantly *more* explicit than the vague reference to acts prohibited by "law" that we have before us) will not suffice. Rather, the parties must make "unmistakably clear" their intent to incorporate in their entirety the "discrimination statutes at issue," as we said in *Carson,* 175 F.3d at 331. This these parties have not done.*

---

* The specific reference to the ADA in the second sentence of Article 37—which appellee contends confirms the ADA's explicit incorporation as part of the agreement—we believe actually confirms our view that the preceding sentence does not constitute explicit incorporation of that statute into the agreement. This is because the explicit statement in the second sentence that the Article "covers employees with a qualified disability under the Americans with Disabilities Act" would be entirely superfluous if we were to read the previous sentence, as appellee advocates, to incorporate all federal statutory antidiscrimination laws. Clearly, if the parties have already incorporated *all* federal statutory discrimination law into their contractual agreement, there would be no need

Finally, we reject appellee's argument that the second sentence of the nondiscrimination provision alone constitutes the "explicit incorporation of statutory antidiscrimination *requirements*" that *Carson* held could establish a waiver. *Id.* (emphasis added). This second sentence does not purport to incorporate any *requirements* of the ADA (or any other federal antidiscrimination statute). Rather, it merely adds disability, as defined by the ADA, to the list of grounds upon which the parties in the previous sentence have agreed not to discriminate. *See Universal Maritime,* 119 S.Ct. at 397 (noting that even a contractual requirement that the arbitrator " 'apply legal definitions derived from the ADA' " is "not the same as making compliance with the ADA a contractual commitment that would be subject to the arbitration clause").

Accordingly, because we cannot say that the intent of the union to waive its employees' statutory right to a federal forum has been clearly and unmistakably established, we reverse the district court's order dismissing Brown's ADA claim.

The judgment of the district court is reversed.

*REVERSED.*

to specify that individuals with a "qualified  disability under the ADA" were also covered.