**Lavern BARNICA, Appellant,**

**v.**

**KENAI PENINSULA BOROUGH SCHOOL DISTRICT and Gladys Stalker, Appellees.**

**No. S–9155.**

Supreme Court of Alaska.

May 3, 2002.

---

**6.** Emphasis omitted.

**7.** *Cf. Gilbert v. State,* 526 P.2d 1131, 1135 (Alaska 1974).

Arthur S. Robinson, Robinson & Beiswenger, Soldotna, for Appellant.

Howard S. Trickey, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellees.

Before: MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

On August 22, 1995, Lavern Barnica resigned from his position as a custodian at the Nikiski High School. Eight months later he sued the Kenai Peninsula Borough School District and his former immediate supervisor, Gladys Stalker,[1] for wrongfully constructively discharging him from employment. Barnica claimed that he was discriminated against because of his sex in violation of AS 18.80.220, and that this discriminatory treatment "made working conditions so intolerable that Plaintiff was forced into involuntary resignation." Barnica alleged that Stalker permitted women custodians to do less work than he was required to do, generally showed partiality towards women custodians, and retaliated against his complaints that he was being unfairly treated by giving him even more work to do. Barnica sought compensatory and punitive damages but not injunctive relief.

The district answered and pled a number of affirmative defenses including that Barnica had failed to exhaust contractual remedies prescribed by the collective bargaining agreement to which he was subject. Subsequently, the district moved for summary judgment on the exhaustion defense. It noted that the collective bargaining agreement specifically prohibited discriminatory treatment on the basis of sex, that it provided a four-step grievance procedure culminating in binding arbitration, and that Barnica did not use these procedures. The district argued that the grievance procedures were exclusive, and that Barnica's unexcused failure to use them precluded him from maintaining the suit.

Barnica opposed the motion. He admitted that to the extent that he was asserting a contract claim, his claim should have been exhausted through the grievance procedures. But he contended that his claim was also a tort claim "for violation of the public policy contained in Alaska's anti-discrimination statute," and that this claim was independent of the collective bargaining agreement and therefore not barred by his failure to use the grievance procedures.

The superior court granted summary judgment in favor of the district. In a balanced opinion, the court noted that authorities in other jurisdictions were divided as to whether exhaustion of contractual remedies should

---

1. Collectively referred to in this opinion as the district.

be required in similar situations. Based generally on our decisions requiring exhaustion of contractual or administrative remedies in many contexts, the court concluded that Barnica

> was required to have exhausted his remedies under the collective bargaining agreement. Most wrongful discharges could be ascribed to some violation of a public policy. If all employees alleging tortious violations of public policy were permitted to circumvent the arbitral procedures set forth in their contractual agreements, it would undermine the doctrine of exhaustion and do violence to the spirit and the letter of the *Cozzen*[2] and *Beard*[3] decisions.

In his opening brief on appeal Barnica continues to characterize his claim as a "statutory public policy tort." He argues that the basis for this claim "is independent of any understanding embodied" in the collective bargaining agreement, and that *Norcon, Inc. v. Kotowski*[4] indicates that he may proceed without exhausting contractual remedies.

In response, the district recasts Barnica's claim as a statutory claim and argues that public policy favoring arbitration points to the application of the exhaustion doctrine to this case. The district also contends that analogous federal decisions have required arbitration of statutory civil rights claims, relying on such cases as *Gilmer v. Interstate/Johnson Lane Corp.*[5] and *Austin v. Owens–Brockway Glass Container, Inc.*[6] In response to Barnica's argument that *Norcon* should control this case, the district argues that *Norcon* is distinguishable. The issue

there was preemption under the federal Labor Management Relations Act, which is inapplicable to states or their political subdivisions. The district argues that the state Public Employment Relations Act, AS 23.40.210(a), applies instead, and that the Public Employment Relations Act mandates that collective bargaining agreements contain grievance procedures with binding arbitration.

In reply Barnica accepts the district's characterization of his claim as a statutory discrimination claim. But he contends that the district's reliance on federal authority is ill conceived. He notes that the 1974 case of *Alexander v. Gardner–Denver Co.*,[7] which arose in a collective bargaining context and did not require exhaustion, was not overruled by the 1991 *Gilmer* decision, which involved an individual contract. He observes that most federal circuits have continued to follow *Gardner–Denver* rather than *Gilmer* in collective bargaining cases.

As Barnica states, "the essential issue in this appeal" is whether the collective bargaining agreement "to arbitrate statutory discrimination claims should be binding on individual employees ...."[8] We regard this as a close question. The collective bargaining agreement explicitly prohibits discrimination on the basis of sex.[9] The Human Rights Act, AS 18.80.220(a), prohibits the same conduct. The Public Employment Relations Act requires that collective bargaining agreements include a grievance procedure "which shall have binding arbitration as its final step."[10] The collective bargaining agreement complies with this requirement.[11] A

---

2. *Cozzen v. Municipality of Anchorage,* 907 P.2d 473 (Alaska 1995).

3. *Beard v. Baum,* 796 P.2d 1344 (Alaska 1990).

4. 971 P.2d 158 (Alaska 1999).

5. 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

6. 78 F.3d 875 (4th Cir.1996).

7. 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

8. Barnica thus concedes that under the terms of the collective bargaining agreement his discrimination claim was subject to arbitration and that

the question we must decide is whether this aspect of the agreement is enforceable.

9. Article 4 of the agreement provides:

> The District and Association shall not discriminate against any bargaining unit member in matters of salaries, fringe benefits, similar terms and conditions of employment, or any other conditions of this Agreement on the basis of ... sex ....

10. AS 23.40.210(a).

11. The grievance procedures article of the collective bargaining agreement provides for a four-step grievance resolution process beginning with

person aggrieved by a violation of the Human Rights Act may bring an action in the superior court;[12] in addition, an aggrieved person may initiate an administrative proceeding before the Commission for Human Rights.[13] Grievance procedures in collective bargaining agreements, like agreements to arbitrate generally, are mandatory in the sense that they preclude the use of otherwise available judicial remedies.[14] But does this rule apply to a claim based on conduct which is both a violation of a collective bargaining agreement and a statute which affords a judicial remedy?

For the reasons that follow, our answer is that a claim subject to an agreement to arbitrate for which an independent statutory judicial remedy is also available must be arbitrated, unless the history and structure of the statute in question indicate that the legislature intended to preclude waiver of the judicial remedy in favor of the arbitral forum. As there is no such indication in the Human Rights Act, we affirm the judgment.

Central to our decision is the fact that the legislature has mandated that all collective bargaining agreements subject to the Public Employment Relations Act contain grievance procedures and that all such procedures must have binding arbitration as a final step.[15] The legislature has recognized that a "rational method for dealing with disputes" between public employers and employees is one of the tools of effective government,[16] and it has chosen grievance procedures with

binding arbitration as the preferred method for the achievement of this goal.[17] The Public Employment Relations Act's declaration of policy states:

> The legislature finds that joint decision-making is the modern way of administering government. If public employees have been granted the right to share in the decision-making process affecting wages and working conditions, they have become more responsive and better able to exchange ideas and information on operations with their administrators. Accordingly, government is made more effective. The legislature further finds that the enactment of positive legislation establishing guidelines for public employment relations is the best way to harness and direct the energies of public employees eager to have a voice in determining their conditions of work, to provide a rational method for dealing with disputes and work stoppages, to strengthen the merit principle where civil service is in effect, and to maintain a favorable political and social environment. The legislature declares that it is the public policy of the state to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government. These policies are to be effectuated by
>
> . . . .
>
> (2) requiring public employers to negotiate with and enter into written agreements with employee organizations on matters of

---

a meeting with the employee's immediate supervisor, continuing through hearings before the superintendent and the school board, and culminating in binding arbitration before an impartial arbitrator selected by the American Arbitration Association. A grievance under the contract is defined as "a claim by a grievant that there has been an alleged violation ... of the [collective bargaining] Agreement ...."

**12.** *See* AS 22.10.020(i). The availability of this remedy, as well as the remedy under the collective bargaining agreement, makes a separate tort remedy unnecessary and we conclude that none is available. *See Walt v. State*, 751 P.2d 1345, 1353 & n. 16 (Alaska 1988).

**13.** *See* AS 18.80.100–.135. Moreover, unlawful discriminatory conduct prohibited under AS 18.80 is a misdemeanor punishable by up to

thirty days in jail and by a fine of no more than $500. *See* AS 18.80.270.

**14.** *See Casey v. City of Fairbanks*, 670 P.2d 1133, 1137 (Alaska 1983); *International Bhd. of Teamsters, Local 959 v. King*, 572 P.2d 1168, 1172 n. 9 (Alaska 1977); *see, e.g., Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (stating general rule in federal law that "individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress").

**15.** *See* AS 23.40.210(a).

**16.** *See* AS 23.40.070.

**17.** *See* AS 23.40.210(a).

wages, hours, and other terms and conditions of employment[.].[18]

The choice of grievance procedures with arbitration as the final step seems well designed to promote harmonious and cooperative government employer-employee relations. Such procedures encourage the early resolution of disputes by discussion and conciliation before they escalate to unmanageable proportions. Various practical remedies are then possible. By contrast, once a case reaches the judicial litigation stage the disputants' positions have typically hardened so that no constructive solution is possible. To use modern terminology, "win/win" results can be achieved with grievance and arbitration procedures, whereas litigation is more likely to be a "zero sum" process—either the employer or the employee will lose.

In addition, we have recognized that the "common law and statutes of Alaska evince 'a strong public policy in favor of arbitration.' "[19] Compared to litigation, arbitration is a relatively inexpensive and expeditious method of dispute resolution.[20] This policy also supports giving primacy to contractual grievance/arbitration clauses in cases like the present.[21]

In the one case in which we addressed a conflict between a collective bargaining grievance/arbitration remedy and a statutory judicial remedy we held that the judicial remedy could be pursued. *Public Safety Employees Ass'n v. State* arose out of a dispute over bush housing owned by the state and rented to certain state employees.[22] We held that some aspects of the dispute fell within a collective bargaining agreement and thus were potentially subject to arbitration.[23]

But we held that the arbitration remedy was not exclusive and that the employees had the right to sue as tenants under the Uniform Residential Landlord and Tenant Act.[24] We had "but little difficulty" in reaching this conclusion because a section of the Uniform Residential Landlord and Tenant Act contained a non-waiver provision applicable not only to rights, but to remedies, under the act.[25] Referring to this non-waiver clause we stated "that the right to sue under the act cannot be prospectively bargained away. Hence, the contract remedy here cannot displace that which is provided by the act." [26]

Unlike the Uniform Residential Landlord and Tenant Act, the Human Rights Act does not contain a provision prohibiting the waiver of judicial remedies. Thus the rationale underlying our conclusion in *Public Safety Employees Ass'n* does not apply to the present case.

One case that we cited in *Public Safety Employees Ass'n* was *Alexander v. Gardner–Denver Co.*[27] There the United States Supreme Court held that an unfavorable arbitrator's decision rendered under a collective bargaining agreement did not preclude an employee from bringing a racial discrimination claim in federal court based on Title VII of the Civil Rights Act of 1964. Based on a number of factors the Court concluded that the Title VII judicial remedy was not meant to be waivable merely because a claim raising the same underlying conduct was submitted to arbitration:

> In sum, Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action

**18.** AS 23.40.070.

**19.** *Department of Pub. Safety v. Public Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987) (quoting *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974)).

**20.** *See id.*

**21.** As the Supreme Court of the United States has recently observed in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001): "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves

smaller sums of money than disputes concerning commercial contracts."

**22.** 658 P.2d 769, 770 (Alaska 1983).

**23.** *Id.* at 774.

**24.** *Id.*

**25.** *Id.*

**26.** *Id.* at 774–75.

**27.** 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.[28]

Some years after our decision in *Public Safety Employees Ass'n*, the United States Supreme Court decided *Gilmer v. Interstate/Johnson Lane Corp.*,[29] which held that an employee was precluded by an arbitration agreement from pursuing a judicial remedy on his claim of age discrimination. In *Gilmer*, the Court established a rule of decision like that which we believe should govern here. Agreements to arbitrate supercede statutory judicial remedies "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."[30] The Court observed that the burden would be on the party opposing arbitration to show that a waiver of the judicial forum was meant to be precluded and that such an intention might be discoverable from the text of the act or its legislative history or from an "inherent conflict" between arbitration and the underlying purposes of the act.[31] The Court cautioned that this inquiry should be engaged in bearing in mind that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."[32]

▪ The *Gilmer* Court then turned to the question of whether Congress, in enacting the Age Discrimination in Employment Act, intended to bar waivers of the individual judicial remedy provided in the act. In a discussion which is in many respects relevant to the present case, the Court found there to be no such intent.[33] The Age Discrimination in Employment Act, like the Human Rights Act, provides both for administrative and judicial remedies and for administrative remedies to take precedence over judicial remedies.[34] In finding no inherent conflict between arbitration and the purpose of the Age Discrimination in Employment Act, the Court pointed to the act's flexible approach to the administrative resolution of claims—informal efforts to conciliate like those provided in the Human Rights Act[35]—which suggested that out-of-court dispute resolution methods like arbitration were consistent with Congress's purpose.[36] The Court also noted that arbitration procedures under the Federal Arbitration Act are fair[37] and the arbitrators in the particular controversy before the court could fashion both damage awards and "other" relief, meaning equitable relief.[38] Similar broad relief is also authorized under the clause in this case: "The arbitrator shall have complete authority to make any decision and provide any remedy appropriate except as otherwise expressly prohibited by law or this Agreement."[39] The *Gilmer* Court also observed that arbitration proceedings would not preclude the commission administering the act from proceeding independently to seek class-wide relief nor would a claimant be precluded from filing an administrative charge even if he is precluded from filing suit.[40] The same can be said with respect to the Human Rights Commission and administrative remedies available under the Human Rights Act.[41]

**28.** *Id.* at 49, 94 S.Ct. 1011.

**29.** 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**30.** *Id.* at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

**31.** *Id.*

**32.** *Id.*

**33.** *Id.* at 27–29, 111 S.Ct. 1647.

**34.** 29 U.S.C. § 626; AS 18.80.145.

**35.** 29 U.S.C. § 626; AS 18.80.145.

**36.** *Gilmer*, 500 U.S. at 29, 111 S.Ct. 1647.

**37.** *Id.* at 30, 111 S.Ct. 1647.

**38.** *Id.* at 32, 111 S.Ct. 1647.

**39.** Here, as in *Gilmer*, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to the resolution in an arbitral, rather than a judicial, forum." 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

**40.** *Id.*

**41.** AS 18.80.060, .100–.110.

*Gilmer* did not overrule *Gardner–Denver.* Instead, the earlier case was distinguished primarily on grounds relating to the fact that a collective bargaining agreement was involved in *Gardner–Denver* while *Gilmer* involved an individual agreement.[42] But the Court also noted that general attitudes toward arbitration had changed in the intervening years:

> The Court in *Alexander v. Gardner–Denver Co.* also expressed the view that arbitration was inferior to the judicial process for resolving statutory claims. That "mistrust of the arbitrable process," however, has been undermined by our recent arbitration decisions. "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." [43]

The Fourth Circuit has applied the *Gilmer* rule to collective bargaining agreements.[44] But most of the other circuits continue to follow *Gardner–Denver* in collective bargaining cases.[45] In 1998 the United States Supreme Court indicated that "whether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer* " is an open question.[46]

We deal here with a question of state law on which neither *Gardner–Denver*, nor *Gilmer*, nor other federal authorities supply binding precedent. These cases are discussed because they deal with a similar controversy in more or less analogous situations and lend history and context to the issue before us. We are in general agreement with the *Gilmer* opinion and believe that it more accurately reflects Alaska policy favoring arbitration than does *Gardner–Denver.* And we do not believe that the distinction between collective bargaining contracts and individual contracts is necessarily meaningful with respect to the treatment of arbitration clauses. Many individual contracts in the employment area are essentially contracts of adhesion offered to the prospective employee on a take-it-or-leave-it basis.[47] Collectively bargained contracts are typically the product of bilateral negotiations and thus can be expected to be at least as fair to employees as standard individual contracts offered by employers.[48] Thus there is little reason to enforce arbitration clauses in individual contracts while declining to enforce similar clauses in collective bargaining agreements.[49]

42. *Gilmer*, 500 U.S. at 35, 111 S.Ct. 1647.

43. Id. at 34 n.5, 111 S.Ct. 1647 (quoting *Mitsubishi Motors*, 473 U.S. at 626–27, 105 S.Ct. 3346) (internal citations omitted).

44. *See Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 880–82 (4th Cir.1996).

45. *See Penny v. United Parcel Serv.*, 128 F.3d 408, 414 (6th Cir.1997) (concluding that "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA"); *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1453 (10th Cir.1997), *vacated on other grounds, Eddy Potash, Inc. v. Harrison*, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 732 (1998); *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir.1997) (holding that "the union cannot consent for the employee by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement"); *Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526–27 (11th Cir.1997); *Varner v. National Super Markets, Inc.*, 94 F.3d 1209, 1213 (8th Cir.1996); *Tran v. Tran*, 54 F.3d 115, 118 (2d Cir.1995).

46. *Wright v. Universal Maritime Serv. Co.*, 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

47. *Cf. Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) (reviewing individual contract); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932 (9th Cir.1992) (same).

48. Further, individual member's claims under Alaska law are less subject to union control than under federal law. For example, if Barnica's union had refused to take his case to step four arbitration, he could have sued the district for breach of the collective bargaining agreement in the superior court without the need, as under federal law, to show that the union had breached its duty of fair representation. *See Casey v. City of Fairbanks*, 670 P.2d 1133, 1138 (Alaska 1983).

49. The lack of fair procedures or the absence of unbiased arbitrators can serve as a reason not to require that contract remedies be used in preference to judicial remedies with respect to both individual and collective bargaining contracts. But such contentions are case specific. *Cf. Bruns v. Municipality of Anchorage*, 32 P.3d 362

Barnica argues that our holding in *Norcon, Inc. v. Kotowski*[50] dictates that a judicial forum for statutory gender discrimination claims cannot be waived. In *Norcon*, an employee covered by a collective bargaining agreement sued for sexual discrimination in violation of AS 18.80.220.[51] The superior court held that plaintiff's claim was preempted by § 301 of the Labor Management Relations Act,[52] and that the claim was subject to the grievance procedures of the contract.[53] We reversed, explaining that "if [an] employee's suit against her employer is based on state law claims neither founded on rights created by a [collective bargaining agreement] nor dependent on the analysis or interpretation of the [collective bargaining agreement], the [Labor Management Relations Act] does not preempt such claims."[54] The question in *Norcon* was one of preemption; if the claim was preempted, the suit was barred by the federal statute of limitations, and if it was not, the employee could proceed with her state statutory judicial remedy.[55] The issue did not, as it does here, involve choosing between a state arbitration remedy and state judicial remedy.

The test used to determine preemption is different from the *Gilmer* test that we are following in this opinion. The preemption test asks whether the worker's rights under state law can be adjudicated without having to interpret the collective bargaining agreement.[56] That contrasts with *Gilmer* which asks whether Congress intended that workers' judicial remedies not be waivable.[57] Answering as we did in *Norcon* that the employee's right to be free from sex discrimination could be determined independently of the collective bargaining agreement is fully consistent with answering the *Gilmer* test by saying that the legislature did not manifest an intent to preclude the waiver of the Human Rights Act judicial remedy in favor of grievance/arbitration procedures.

Barnica points to the statement in *Norcon* that "[t]he right to a non-discriminatory workplace conferred ... by AS 18.80.220 could not be waived by any contrary contractual provision."[58] On its face this statement speaks of a substantive right and not remedies.[59] It is not inconsistent with finding the judicial remedy for a discriminatory workplace waivable in favor of grievance/arbitration procedures. For these reasons we reject Barnica's argument that our decision in this case is controlled by *Norcon*.

One additional Alaska case should be mentioned. In *Storrs v. Municipality of Anchorage* we held that an employee's state constitutional right to a pretermination hearing could be waived in a collective bargaining agreement so long as the remedy substituted by the collective bargaining agreement was "fair, reasonable and efficacious."[60] This holding supports our conclusion that statutory remedies can be waived by reason of substitute remedies in collective bargaining agreements. If constitutionally mandated remedies may be waived by alternative grievance/arbitration procedures, statutory remedies likewise may be subject to waiver because of such procedures.

For the reasons stated, the judgment is AFFIRMED.

FABE, Chief Justice, not participating.

(Alaska 2001) (discussing excuse of failure to exhaust administrative remedies "where administrative procedures are ineffective because of lack of meaningful access, bias, futility, or the possibility that the claimant could face irreparable harm"). No contentions of procedural unfairness or bias are made in this case.

50. 971 P.2d 158 (Alaska 1999).

51. *Id.* at 165.

52. 29 U.S.C. § 185.

53. *Norcon*, 971 P.2d at 164.

54. *Id.* at 164–65.

55. *Id.*

56. *Id.*

57. *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647.

58. *Norcon*, 971 P.2d at 165.

59. The *Gilmer* Court stressed that statutory substantive rights are not waived even though statutory remedies may be. *See supra* note 39.

60. 721 P.2d 1146, 1150 (1986).

**982**

BRYNER, Justice, with whom CARPENETI, Justice, joins, dissenting.

I dissent from the decision requiring Barnica to assert his discrimination claim through binding arbitration under his Collective Bargaining Agreement. Because this court is evenly divided on this issue, the plurality opinion will affirm the superior court's ruling but will have no precedential effect.[1] I nevertheless think it important to explain my reasons for dissenting. In my view, the plurality's decision misinterprets federal case law, underestimates our own precedent, and reaches a conclusion at odds with the likely intent of the CBA's arbitration clause.

To help resolve new questions concerning the scope and effect of Alaska's Public Employment Relations Act,[2] this court has commonly looked to relevant federal case law for guidance.[3] Today's plurality opinion breaks with this tradition by following a federal ruling that happens to agree with the plurality's policy views but does not apply in the present procedural setting; at the same time, the plurality all but ignores a more recent Supreme Court ruling that is squarely relevant and directly contradicts the plurality's position.

Almost three decades ago in *Alexander v. Gardner–Denver Co.*, the United States Supreme Court categorically held that a collective bargaining agreement's arbitration clause cannot defeat a union worker's right to pursue a private, statutory cause of action

in court.[4] Seventeen years later, in *Gilmer v. Interstate/Johnson Lane Corp.*, the Court reached the opposite result in a non-union setting, ruling that a private employment contract's arbitration clause may be presumed to have waived an employee's right to pursue potentially arbitrable, employment-related, statutory judicial remedies " 'unless Congress itself has evinced an intention to preclude a waiver[.]' "[5] Although this court has previously recognized and applied the rule articulated in *Gardner–Denver*,[6] today's plurality decision discards that rule as outmoded, opting instead for the *Gilmer* rule, which, it asserts, "more accurately reflects Alaska policy favoring arbitration."[7]

But in its eagerness to embrace what it sees as *Gilmer's* more contemporary policies, the plurality shortchanges the Supreme Court's most recent pronouncement on the subject, *Wright v. Universal Maritime Service Corp.*[8] In *Wright*, an opinion issued just four years ago, the Supreme Court granted review of a ruling by the fourth circuit invoking the *Gilmer* rule to bar a longshore worker from pursuing a claim in federal court under the Americans with Disabilities Act.[9] In reaching its decision, the fourth circuit tacitly reasoned, in keeping with its earlier decision in *Austin v. Owens–Brockway Glass Container, Inc.*,[10] that the Supreme Court had effectively overruled *Gardner–Denver* in *Gilmer* and that, under *Gilmer*, the worker's statutory claim had to be arbitrated under his CBA.[11]

---

1. Our case law establishes that "[a] decision by an evenly divided court results in an affirmance." *Ward v. Lutheran Hosps. & Homes Soc'y of America, Inc.*, 963 P.2d 1031, 1037 n. 11 (Alaska 1998) (quoting *Thoma v. Hickel*, 947 P.2d 816, 824 (Alaska 1997)). Moreover, "an affirmance by an equally divided court is not precedent." *City of Kenai v. Burnett*, 860 P.2d 1233, 1239 n. 11, 1246 (Alaska 1993) (Compton, J., concurring).

2. AS 23.40.070–.260.

3. *See, e.g., Pub. Safety Employees Ass'n v. State*, 658 P.2d 769, 775 (Alaska 1983).

4. 415 U.S. 36, 49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

5. 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v.*

*Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

6. *See Pub. Safety Employees Ass'n*, 658 P.2d at 775.

7. Op. at 980–81.

8. 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

9. *Id.* at 72, 75, 119 S.Ct. 391.

10. 78 F.3d 875 (4th Cir.1996).

11. *Wright*, 525 U.S. at 75–76, 119 S.Ct. 391 (describing fourth circuit's unpublished opinion in *Wright v. Universal Maritime Servs. Corp.*, 121 F.3d 702 (4th Cir.1997)).

In arguing this decision before the Supreme Court, the parties and the amici curiae concentrated on what they saw as the crucial question: whether the fourth circuit correctly decided that *Gilmer* had superceded *Gardner–Denver's* unequivocal holding that an arbitration clause in a CBA could not collectively bargain away a worker's individual right to a statutory judicial remedy.[12] But the Supreme Court found it unnecessary to answer this question, ruling instead that even if *Gilmer* might require arbitration in some collective bargaining situations, *Gardner–Denver* nonetheless governed the case at issue, since the generalized arbitration clause of the CBA in *Wright* did not incorporate a "clear and unmistakable" waiver of the statutory remedy.[13]

Specifically, *Wright* emphasized, the rule of waiver that it articulated in *Gilmer* depends largely on the presumption of arbitrability; but in the collective bargaining context, this presumption extends only as far as "the reach of the principal rationale that justifies it, which is that arbitrators are in a better position than courts *to interpret the terms of a CBA.*"[14] *Wright* further concluded that neither the underlying rationale nor the presumption of arbitrability applies when a union worker seeks to assert a statutory remedy, since, when a claim arising under a statutory remedy also might be covered by the general terms of a CBA arbitration clause, the claim's resolution "ultimately concerns not the application or interpretation of any CBA, but the meaning of a federal statute."[15] In the absence of the presumption of arbitrability, then, *Wright* decided to apply a strict rule disfavoring implied contractual waiver of statutory rights: "[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly stated."[16]

Hence, although the Supreme Court's opinion in *Wright* does not definitively resolve the tension between *Gilmer* and *Gardner–Denver*, it reconfirms that *Gardner–Denver* survived *Gilmer* and remains a vital precedent, at least to the extent that *Gardner–Denver* continues to preclude a union from collectively bargaining away a worker's individual right to a statutory judicial remedy unless the CBA incorporates a "clear and unmistakable" waiver of the statutory claim.[17]

Despite this unequivocal ruling, today's plurality decision all but dismisses *Wright*, quoting only a snippet from that decision for the proposition "that 'whether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employee's federal forum rights survives *Gilmer* ' is an open question."[18] But while this narrow proposition is technically true, it veils *Wright's* broader significance: the plurality divorces the quoted snippet of language from its contextual setting, inaccurately suggesting that *Wright* does nothing more than leave an open question. What *Wright* actually says in the passage that embodies the quoted language is this:

> We think the same ["clear and unmistakable waiver"] standard applicable to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination. Although that is not a substantive right, and whether or not *Gardner–Denver's* seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner–Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.[19]

---

**12.** *Id.* at 76–77, 119 S.Ct. 391.

**13.** *Id.* at 77, 80–81, 119 S.Ct. 391.

**14.** *Id.* at 78, 119 S.Ct. 391.

**15.** *Id.* at 78–79, 119 S.Ct. 391.

**16.** *Id.* at 80, 119 S.Ct. 391 (quoting *Metro Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467,

75 L.Ed.2d 387 (1983)) (internal quotations omitted).

**17.** *Id.* at 80–81, 119 S.Ct. 391.

**18.** Op. at —— (quoting *Wright*, 525 U.S. at 80, 119 S.Ct. 391).

**19.** *Id.* at 80, 119 S.Ct. 391 (citations omitted).

*Wright* goes on to disapprove of the fourth circuit's invocation of *Gilmer* in unmistakable terms:

> The Fourth Circuit relied upon the fact that the equivalently broad arbitration clause in *Gilmer*—applying to "any dispute, claim or controversy"—was held to embrace federal statutory claims. But *Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees and hence the "clear and unmistakable" standard was not applicable.[20]

As these passages make clear, then, the Court in *Wright* pointedly refused to declare *Gardner–Denver* dead and, instead, explicitly confirmed that, despite *Gilmer*, *Gardner–Denver* remains vital in a way that is crucially relevant here.

Post-*Wright* federal circuit opinions underscore that *Wright's* requirement for waiver of a judicial remedy is not easily met: these opinions generally recognize that a CBA will be construed to incorporate a "clear and unmistakable" waiver of a statutory antidiscrimination claim only if it contains an arbitration clause that explicitly agrees "to submit all federal causes of action arising out of . . . employment to arbitration"[21] or, in the event of a more general arbitration clause, only if the CBA contains an additional provi-

sion that includes an *"explicit* incorporation of the *statutory* anti-discrimination requirements."[22]

Barnica's CBA fails to meet these federal criteria for a "clear and unmistakable" waiver: its arbitration clause does not explicitly require submission of statutory claims to arbitration; and while the CBA does include general antidiscrimination language, that language does not explicitly incorporate any statutory antidiscrimination requirements. In similar cases, including *Wright*, federal courts have found CBA grievance provisions to be too general to meet the "clear and unmistakable" standard.[23] Indeed, of all federal circuit cases that have addressed the issue since *Wright*—including three from the fourth circuit—apparently none has yet found a CBA that satisfies *Wright's* "clear and unmistakable" waiver standard.[24]

Contrary to the plurality opinion's suggestion, then, federal law unequivocally points to the conclusion that Barnica's CBA cannot properly be construed to have waived his right to pursue an independent court action on his statutory claim. Here, as in *Wright*, the arbitration clause is "very general," and "could be understood to mean matters in dispute under the contract"; moreover, "the remainder of the contract contains no *explicit* incorporation of the *statutory* antidiscrimi-

---

20.  *Id.* at 80–81, 119 S.Ct. 391.

21.  *Rogers v. New York Univ.*, 220 F.3d 73, 76 (2d Cir.2000); *accord Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir.1999).

22.  *Rogers*, 220 F.3d at 76 (emphasis added); *accord Carson*, 175 F.3d at 332. Hence, even when other sections of the CBA prohibit discrimination in terms similar to the statutory protection, the waiver of a judicial remedy requires explicit mention of the statute incorporated. *See Rogers* at 76 (stating that "[c]ourts agree that specific incorporation requires identifying the anti-discrimination statutes by name or citation"); *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 654 (6th Cir.2000) (disapproving of a non-discrimination clause that failed to mention the ADA by name); *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir.1999) (ruling that since antidiscrimination provision was in separate section of CBA from grievance procedure, it did not require arbitration of such claims).

23.  *Compare* CBA Article 35 ("A 'grievance' shall mean a claim by a grievant that there has been an alleged violation, misinterpretation, or misap-

plication of the Agreement, or a violation of official Board policy."), *with Wright*, 525 U.S. at 73, 119 S.Ct. 391 ("Any dispute concerning or arising out of the terms and/or conditions of this Agreement, or dispute involving the interpretation or application of this Agreement, or dispute arising out of any rule adopted for its implementation, shall be referred to [arbitration]"); *Kennedy*, 215 F.3d at 654 ("any controversy or dispute arising from the interpretation and/or application of the terms and work conditions under this labor agreement"); *Bratten*, 185 F.3d at 631 ("[a]ny grievance arising under the terms of this contract or an alleged violation thereof"); *Rogers*, 220 F.3d at 76 ("[a]ny dispute concerning the interpretation, application, or claimed violation of a specific term or provision of this Agreement").

24.  *See Robinson v. Healthtex, Inc.*, 215 F.3d 1321 (4th Cir.2000); *Carson*, 175 F.3d at 332; *Brown v. ABF Freight Sys., Inc.*, 183 F.3d 319 (4th Cir.1999).

nation requirements." [25]   Just as in *Wright,* then, "the CBA in this case does not meet [the] standard." [26].

To be sure, the plurality opinion correctly observes that Barnica's case presents "a question of state law on which [federal authorities do not] supply binding precedent." [27] Hence we consider the *Gilmer/Gardner–Denver/Wright* line of cases only because those cases are helpful. Yet as I emphasized earlier, this court usually regards federal precedent in this field as highly persuasive. Furthermore, the federal cases cited here have applied the "clear and unmistakable" waiver standard to a wide range of antidiscrimination statutes, both state and federal.[28] I see no sound reason, then, to deviate from the federal cases.

Indeed, if any good reasons exist to distinguish Barnica's case from *Wright* and its progeny, they seem to favor adopting an even more stringent state waiver requirement. First, as the plurality's decision correctly points out, CBAs that fall within the coverage of Alaska's Public Employment Relations Act must incorporate binding arbitration as a final step of the grievance procedure.[29] Realistically, then, there seems little

reason to presume that a general arbitration clause will reflect anything more than the parties "clear and unmistakable" intent to comply with the statutory mandate to arbitrate those disputes that arise exclusively under, and consequently depend upon an interpretation of, the CBA.

A separate and equally compelling reason to enforce a stringent state rule against waiver of statutory claims is that our own precedent strongly counsels against allowing employers and unions to collectively bargain for such waivers. In *Public Safety Employees Ass'n v. State,* we unequivocally held that public employees working under a CBA could not be required to prospectively bargain away their right to sue under Alaska's Landlord Tenant Act.[30] And more recently, in *Norcon, Inc. v. Kotowski,* we broadly emphasized that "[t]he right to a non-discriminatory workplace conferred ... by AS 18.80.220 could not be waived by any contrary contractual provision. Because it is a non-waivable state law right, no need exists to consult the CBA to determine its meaning." [31]

The plurality tries to distance itself from these precedents. But its attempts are unpersuasive.[32]   True, neither *PSEA* nor *Nor-*

25.  *Wright,* 525 U.S. at 80, 119 S.Ct. 391 (emphasis added).

26.  *Id.* at 80, 119 S.Ct. 391.

27.  Op. at 980.

28.  *See Wright,* 525 U.S. at 76, 119 S.Ct. 391 (citing cases considering, among others, claims under Title VII of the Civil Rights Act of 1964 and Fair Labor Standards Act of 1938); *see also, e.g., Rogers,* 220 F.3d at 74, 76 (considering claims under the Americans with Disabilities Act, Family and Medical Leave Act, and state and local human rights laws).

29.  *See* AS 23.40.210(a):
     (a) Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement.... The agreement shall include a grievance procedure which shall have binding arbitration as its final step. Either party to the agreement has a right of action to enforce the agreement by petition to the labor relations agency.

30.  658 P.2d 769, 770, 774–75 (Alaska 1983).

31.  971 P.2d 158, 165 (Alaska 1999).

32.  The plurality distinguishes *Public Safety Employees Ass'n v. State* by noting that, unlike the Human Rights Act at issue here, the Uniform Residential Landlord and Tenant Act at issue in *PSEA* contained an express provision against waiver of judicial remedies. Op. at 978–79. But this was only one of several factors that we mentioned in deciding *PSEA.* Notably, another factor we considered was the existence of a body of federal decisions—among them, *Gardner–Denver*—which we described as holding that, "[i]n circumstances involving coincident arbitral and statutory avenues of relief, ... arbitration does not afford an exclusive remedy." *PSEA,* 658 P.2d at 774–75. Our express reliance on *Gardner–Denver* and other analogous federal cases establishes that *PSEA's* broad language was not exclusively based on the URLTA's express anti-waiver provision.

The plurality also attempts to explain *Norcon* as simply a federal preemption case. Op. at 980–81. But *Norcon's* discussion of federal preemption cannot account for its broad and categorical language holding that Kotowski's rights under AS 18.80.220 "could not be waived by any contractual provision" and that AS 18.80.220 was "a non-waivable state law right." *Norcon,* 971 P.2d at 165. Strictly speaking, of course, these statements are dicta. But they certainly do

*con* directly controls the outcome here; yet the plurality's retreat from their deliberately broad language hardly seems consonant with their intent and spirit—particularly when one considers that the plurality proposes to replace this broad language discouraging waiver with a strong presumption of waiver that originates in a federal judicial rule that federal courts themselves would decline to apply to these facts.

In short, given our own case law and the rule articulated by the United States Supreme Court in *Wright,* I would hold that the CBA does not extinguish Barnica's right to a cause of action under the Human Rights Act and that Barnica should remain free to pursue his superior court action.

not deal with preemption. Nor can *Norcon's* focus on preemption explain its citation to *PSEA* (which had nothing to do with federal preemption) as "a similar situation" in which we established that "the existence of the arbitration remedy did not preclude the exercise of the statutory remedy." *Norcon,* 971 P.2d at 165. And finally, while the plurality correctly observes that the test for preemption at issue in *Norcon* differs from the *Gilmer* test that it proposes to adopt as the law of Alaska, Op. at 981, this observation begs the threshold question whether *Gilmer* properly applies to the facts in Barnica's case. By glossing over this preliminary question, the plurality overlooks that *Wright's* test for determining whether the presumption of arbitrability attaches in a given case—the very determination that, according to *Wright,* justifies substituting the *Gilmer* analysis for *Gardner–Denver's* "clear and unmistakable" waiver requirement—is exactly the same as the test for federal preemption: whether the dispute at issue necessarily hinges on an interpretation of the CBA. *Compare Norcon,* 971 P.2d at 164–65 with *Wright,* 525 U.S. at 77–79, 119 S.Ct. 391. *Norcon's* preemption analysis thus accords with the prescribed analysis in *Wright* and strongly counsels against reliance on *Gilmer.*