**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM L. SINGLETARY,
                    *Plaintiff-Appellee,*

v.

ENERSYS, INCORPORATED, formerly
known as Yuasa, Incorporated,
                    *Defendant-Appellant.*

No. 02-1638

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-00-527-3-10)

Argued: January 22, 2003

Decided: February 10, 2003

Before WILKINSON, Chief Judge, and WILKINS and MOTZ,
Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** George Andrew Harper, JACKSON LEWIS, L.L.P.,
Greenville, South Carolina, for Appellant. John Palmer Britton,
BRITTON LAW FIRM, Sumter, South Carolina, for Appellee. **ON
BRIEF:** Robert M. Sneed, JACKSON LEWIS, L.L.P., Greenville,
South Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

William Singletary brought this action against his former employer, Enersys, Inc., seeking compensatory and punitive damages for alleged wrongful termination of employment in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101-117, 12201-213 (West 1995 and West Supp. 2002), the Family and Medical Leave Act (FMLA), 29 U.S.C.A. §§ 2601-54 (West 1999), and South Carolina law. Enersys moved to dismiss the action and compel arbitration of Singletary's claims or, alternatively, to stay the action pending the outcome of arbitration.

Finding that the collective bargaining agreement did not contain explicit provisions sufficient to waive Singletary's right to litigate his employment grievances in federal court, the district court denied Enersys's motions. Enersys then moved for interlocutory appeal on the question of "[w]hether the collective bargaining agreement satisfies the *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998) standard for permitting waivers of an employee-union member's statutory right to a jury trial on his federal and statutory claims under the ADA and the FMLA?" The district court certified the question, and we granted Enersys's petition for interlocutory appeal. *See* 28 U.S.C.A. § 1292(b) (West 1993). We reverse.

## I.

Singletary began work for Enersys's predecessor on June 12, 1988. He contends that on February 26, 1999 his employment was unlawfully terminated because of a disability (paranoid schizophrenia), which had been diagnosed in 1985. Singletary maintains that he successfully treated his schizophrenia with medication during the bulk of his employment, requiring only four short hospitalizations over more than ten years of employment with the company. After his last hospi-

talization, Singletary apparently had trouble adjusting to his new medication and, rather than return to work, re-entered the hospital. During this time, Enersys terminated his employment, ostensibly because of "absenteeism." Singletary then brought this action for wrongful termination.

There is no dispute that the collective bargaining agreement (CBA) entered into by the company and the I.U.E. International Union governed Singletary's employment and his subsequent termination. The only question is whether the arbitration provisions of the CBA were sufficiently clear to meet the standards required to constitute a waiver of Singletary's right to litigate in a judicial forum his statutory claims of employment discrimination.

## II.

We review the district court's contract interpretation decision *de novo. See United States v. Bankers Insurance Co.*, 245 F.3d 315, 319 (4th Cir. 2001). In doing so, however, we do not simply apply common law principles of contract interpretation; nor do we impose the general presumption of arbitrability that applies in other contexts. Rather, the Supreme Court has directed that in situations like this, involving a "a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination," such a waiver must be "clear and unmistakable." *See Universal Maritime*, 525 U.S. at 80-81; *see also Carson v. Giant Food, Inc.*, 175 F.3d 325, 331 (4th Cir. 1999) ("[C]ollective bargaining agreements to arbitrate these [statutory] claims, unlike contracts executed by individuals, must be 'clear and unmistakable'" (quoting *Universal Maritime*, 525 U.S. at 80)).[1]

In applying *Universal Maritime*, we have concluded that a collective bargaining agreement can achieve "the requisite degree of clarity

---

[1]In *Universal Maritime*, the Supreme Court specifically reserved the question whether a union-negotiated waiver of a statutory right to litigate employment claims in federal court can ever be enforceable. *See Universal Maritime*, 525 U.S. at 82. This court, however, has "answered that question — both before that decision and since — in the affirmative." *Brown v. ABF Freight Systems, Inc.*, 183 F.3d 319, 321 (4th Cir. 1999).

. . . by two different approaches." *Carson*, 175 F.3d at 331. The first approach "simply involves drafting an explicit arbitration clause," i.e., "a clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment." *Id.* The second approach applies "when the arbitration clause is not so clear," and requires that such "[g]eneral arbitration clauses" be supported by additional provisions mandating "explicit incorporation of statutory anti-discrimination requirements," which "make[ ] it unmistakably clear that the discrimination statutes at issue are part of the agreement." *Id.*, at 332; *see also Brown v. ABF Freight Systems, Inc.*, 183 F.3d 319, 321-22 (4th Cir. 1999). In the case at hand, we need only consider the first approach.

Article V (Non-Discrimination) of the governing CBA provides in pertinent part:

> The company and the union recognize the importance of providing all employees with equal employment opportunities, as provided by applicable laws. Therefore, the Company and the Union agree that no employee will be discriminated against based upon their race, color, creed, religion, sex, national origin, age, disability, or status as a Vietnam era veteran. The Company and the Union will comply with all laws preventing discrimination and regarding employment of individuals. . . .
>
> *Any and all claims regarding equal employment opportunity or provided for under this Article of the Agreement or under any federal or state employment law shall be exclusively addressed by an individual employee or the Union under the grievance and arbitration provisions of this Agreement.*

The specific grievance and arbitration procedures are detailed separately in Articles XIII (Grievances) and XIV (Arbitration).

The district court concluded that the language emphasized above did not constitute the "clear and unmistakable" waiver described in *Universal Maritime* because it was "general in nature," "somewhat ambiguous," devoid of any "specific reference to arbitration of

employee claims against Defendant under the ADA, FMLA, or state law governing wrongful termination of employment," and lacking any "explicit incorporation of statutory antidiscrimination requirements." Singletary urges us to affirm the district court, arguing similarly that the language of the CBA does not constitute an "explicit arbitration agreement" because "the word 'statute' is not present, there is no reference to statutory discrimination disputes, there is no reference to the FMLA, and there is no language that compels arbitration." Brief of Appellee at 8.[2]

We disagree with the interpretation of the CBA advanced by the district court and urged on us by Singletary. Article V of the CBA does include an explicit arbitration provision: "Any and all claims . . . under any federal or state employment law shall be exclusively addressed by an individual employee or the Union under the grievance and arbitration provisions of this Agreement." This language constitutes a "clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment." *Carson*, 175 F.3d at 331. Although

---

[2]Singletary also contends that the CBA arbitration provisions are permissive rather than mandatory because Article XIV (Arbitration) states that "[a]ll disputes . . . *may* be referred to arbitration." *Id.* at 11-12. This argument disregards the context of the "may." Article XIV provides in pertinent part: "All disputes under this agreement which are not settled or resolved may be referred to arbitration by a notice given to the other party. Notice of appeal of a grievance must be given within ten (10) days of the Company's decision in the last step of the Grievance Procedure. In the event that notice of arbitration is not given within the ten (10) day period, the grievance shall be considered settled and/or waived." JA 50. Thus, failure to give proper and timely notice of arbitration ordinarily results in settlement or waiver of the grievance; this does not render arbitration permissive. *See Austin v. Owens-Brockway Glass Container, Inc.*, 78 F.3d 875, 879 (4th Cir. 1996) (finding that purpose of the word "may" in a CBA was "to give an aggrieved party the choice between arbitration and abandonment of his claim"); *see also Bankers Ins. Co.*, 245 F.3d at 320-21 (same). We note, however, that at oral argument counsel for Enersys stipulated that, in any event, this ten-day notice provision could not be applied in a manner that would prevent an employee from exercising his procedural rights to arbitrate statutory employment discrimination claims initiated within the time period set forth in the governing statute.

the language is indeed quite broad, it could not be more clear. Nothing in *Universal Maritime*, *Carson*, or *Brown* requires that the provision be narrow in scope, just that it be clear and unmistakable in its application to statutory claims. The arbitration provision here refers explicitly to "*any* and *all* claims . . . under *any* federal or state employment law," thus, its application to statutory claims arising in the employment context is certainly clear. Simply put, it includes the entire set of such claims, leaving no room for courts and litigants to speculate on the margins about which claims are covered and which are not.

A quick review of the agreements at issue in the leading cases illustrates the point. In *Universal Maritime*, 525 U.S. at 80, the arbitration clause merely provided for arbitration of "[m]atters under dispute" without elaborating on whether those matters could arise under the employment contract, or federal law, or both, and "contain[ed] no explicit incorporation of statutory anti-discrimination requirements." Similarly, in *Carson*, 175 F.3d at 332, the arbitration clauses stated "that the parties agree to arbitrate all disputes over the meaning of the agreement," without mentioning "disputes arising under federal law," and without any explicit incorporation of federal statutory law. Finally, in *Brown*, 183 F.3d at 321-22, the arbitration provisions also referred generally to "all grievances or questions of interpretation arising under . . . this Agreement," without any mention of those that might arise out of alleged statutory violations and without any explicit provision incorporating the anti-discrimination statutes. Consequently, in all of these cases, the arbitration provisions were held insufficient to constitute waivers of the employees' rights to litigate their statutory claims. By comparison, the arbitration clause in this case was far more explicit — referring to "any and all claims . . . under any federal or state employment law."

Indeed, the provision at issue in this case is arguably even more clear than that in *Safrit v. Cone Mills Corp.*, 248 F.3d 306, 308 (4th Cir. 2001) (*per curiam*), which we held sufficient to waive an employee's right to a judicial forum. In *Safrit*, the CBA stated only that the parties agreed to "abide by all the requirements of Title VII" and "that [u]nresolved grievances arising under this Section are the proper subjects for arbitration." *Id.* The CBA in this case explicitly mandates that "any and all claims . . . under any federal or state

employment law shall be exclusively addressed" through the agreement's grievance and arbitration procedures.

### III.

No matter how sympathetic his claims, William Singletary submitted to a union-negotiated agreement that contained an explicit arbitration clause, which clearly and unmistakably waives his rights to litigate statutory employment discrimination claims in a judicial forum. Such "[a]n agreement to arbitrate statutory claims is part of the natural tradeoff that a union must make in exchange for other benefits." *Safrit*, 248 F.3d at 308. Had the union and the company struck a different bargain, the result might indeed be different. But this is the bargain they reached, and we hold that it is sufficient under *Universal Maritime* and *Carson* to constitute a waiver of the right to litigate statutory claims in a judicial forum. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*