Robert R. HAMMOND, Appellant,

v.

STATE of Alaska, DEPARTMENT OF
TRANSPORTATION & PUBLIC
FACILITIES, Appellees.

No. S–10448.

Supreme Court of Alaska.

Feb. 25, 2005.

Robert R. Hammond, pro se, Chugiak.

Marjorie L. Vandor, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Robert Hammond was terminated from his job with the Department of Transportation and Public Facilities. He contested his termination by pursuing the grievance-arbitration mandated by his collective bargaining agreement. While his grievance was being contested, Hammond simultaneously pursued statutory whistleblower claims in state court against the Department of Transportation and Public Facilities and fellow employees David Eberle, Richard Briggs, and Gordon Keith. His grievance was ultimately dismissed after arbitration. The superior court then gave *res judicata* effect to the arbitral decision to grant summary judgment for the defendants. Hammond appeals. We hold that Hammond is not precluded from pursuing his independent statutory claims in state court because he did not clearly and unmistakably agree to submit those claims to arbitration. We therefore reverse the superior court's grant of summary judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Robert Hammond was an employee of the Alaska Department of Transportation and Public Facilities (DOTPF) for approximately twenty years. In August 1994 he was assigned to DOTPF's Homer Gravel Roads

Project. While working on the project, Hammond concluded that the rock being used by the contractor violated the DOTPF contract specification that established maximum rock size. Hammond made a series of complaints to the contractor, throughout the DOTPF chain of command, and to the Federal Highway Administration (FHWA) about what he believed to be a violation of contract specifications.[1] In October Hammond complained to DOTPF's Director of Design and Construction, Dean Reddick, about the project's management and about the contractor's failure to follow contract specifications. At that meeting Hammond requested that he be transferred from the project; Reddick complied.

After being transferred from the project Hammond made repeated allegations of DOTPF mismanagement. Some of these allegations were extremely serious and charged DOTPF and its personnel with corruption, fraud, and incompetence. In June 1995 Hammond received performance evaluations from his supervisor on the Homer Gravel Roads project and from Richard Briggs, his regular supervisor, stating that his performance was "mid-level acceptable." In July 1995 Hammond filed charges with FHWA alleging criminal violations of 18 USC § 1020[2] by DOTPF management. As a result of these charges, Hammond was placed on paid, off-site status, which subjected him to a reduction in wages. After investigation, FHWA concluded that Hammond's charges were without merit. A separate investigation into Hammond's allegations was conducted by the state, which hired an independent investigator, Richard Kerns, to investigate the Homer Gravel Roads Project and another project. Kerns's investigation found no violations of 18 USC § 1020 or the Alaska Whistleblower Act.[3] Kerns also concluded that Hammond had no reasonable basis to make his allegations and that the allegations were not made in good faith.

David Eberle, Director of Design and Construction for the Central Region of DOTPF, terminated Hammond's employment with DOTPF on July 31, 1996, relying primarily upon the Kerns report and the recommendations of Briggs and DOTPF Regional Construction Engineer Gordon Keith. Eberle cited Hammond's "unfounded attacks impugning the integrity and competence of department staff and Federal Highway Administration personnel, threatening behavior, and refusal to follow the directions of management" as the reasons for termination.

### B. Proceedings

On August 7, 1996 Hammond brought a grievance under his union's collective bargaining agreement (CBA), alleging that DOTPF violated the CBA by discharging him without "just cause." The parties were unable to resolve the grievance and they submitted the dispute to arbitration as mandated by the CBA.

On December 21, 1996 Hammond also filed suit in superior court against DOTPF, Eberle, Keith, and Briggs,[4] alleging violation of the Alaska Whistleblower Act[5]

---

1. The parties dispute the nature of Hammond's complaints and the response to those complaints by DOTPF employees.

2. 18 USC § 1020 (West 2000) imposes a fine or imprisonment, or both, upon a person who knowingly makes false statements or false representations, concerning any federally-funded highway project, about "the character, quality, quantity, or cost of the material used or to be used, or the quantity or quality of the work performed or to be performed."

3. AS 39.90.100–39.90.150.

4. This opinion refers to the defendants collectively as "DOTPF."

5. AS 39.90.100(a) provides in relevant part that: [a] public employer may not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because
    (1) the employee ... reports to a public body or is about to report to a public body on a matter of public concern; or
    (2) the employee participates in a court action, an investigation, a hearing, or an inquiry held by a public body on a matter of public concern.
We have held that AS 39.90.100(a) " 'protects public employees who report to public bodies on matters of public concern from retaliation by their employers.' " *Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001) (quoting *Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116, 1121 (Alaska 1997)). In order to bring suit under the Alaska Whistleblower Act "an employee must show that (1) she has engaged in protected activity and (2) the activity was a 'substantial'

and seeking compensatory and punitive damages and reinstatement to his former position.

After a hearing, the arbitrator held that Hammond's discharge was for "just cause" and therefore did not violate the CBA.[6] The arbitrator denied Hammond's grievance based on her finding that Hammond's accusations—that DOTPF management acted dishonestly, engaged in unethical behavior, allowed contractors to cheat, falsified documents, gave away state property, and was incompetent—"stepped over the bounds of reason" and justified termination because they were not "made in good faith; that is, with a reasonable basis for believing them to be true." The arbitrator also stated that Hammond was not entitled to protection under the Alaska Whistleblower Act because the allegations for which he was terminated were not made in good faith.[7]

After the unfavorable arbitration decision, Hammond pursued his superior court whistleblower action. In his state court action, Hammond relied upon a report on the Homer Gravel Roads project by the Alaska Division of Legislative Audit released after the arbitrator's decision. The report found that Hammond's claims had merit and that DOTPF's selection of Kerns to investigate Hammond's allegations against DOTPF was flawed; it also called Kerns's independence into question.

In February 2001 Superior Court Judge Dan A. Hensley granted DOTPF's motion for summary judgment based on the arbitrator's decision. The superior court held that Hammond was precluded from litigating his whistleblower claim in superior court because the parties understood that the arbitrator would

have to address whistleblowing issues in her decision and because the arbitrator did decide the whistleblowing claim. Hammond appeals.

## III. STANDARD OF REVIEW

■■■ "We review a trial court's grant of summary judgment *de novo* and affirm its ruling if the record presents no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law."[8] We draw all reasonable factual inferences in favor of the non-moving party.[9] Finally, "[t]he applicability of estoppel principles to a particular set of facts is a legal question over which we exercise independent review."[10]

## IV. DISCUSSION

### A. The Arbitrator's Decision in Hammond's State Court Whistleblower Action Was Not Entitled to Preclusive Effect.

#### 1. Hammond has a right to a fully independent judicial determination of his statutory whistleblower action unless he submitted that claim to arbitration.

■■■ Hammond argues that the arbitrator exceeded the scope of her authority by resolving or attempting to resolve his state court whistleblower claim. He contends that the arbitrator's decision should not be granted preclusive effect because the only question the parties submitted to arbitration was whether Hammond was terminated for "just cause." Thus, Hammond argues, the arbitrator lacked the authority to decide his

---

or 'motivating factor' in her termination. An employer may rebut a prima facie case by demonstrating that the employee would have been discharged even had she not engaged in the protected activity." *Id.* (internal citations omitted).

**6.** The arbitrator stated that "[t]he essential elements of proof in a just cause case are: 1) whether the employee committed the offenses charged; 2) whether the employee was afforded due process; and 3) whether the penalty was appropriate under the facts and circumstances of the case, including the employee's record of employment."

**7.** AS 39.90.110(a) provides in relevant part:

[a] person is not entitled to the protections under AS 39.90.100–39.90.150 unless the person

(1) reasonably believes that the information reported is or is about to become a matter of public concern; and

(2) reports the information in good faith.

**8.** *Spindle v. Sisters of Providence in Washington,* 61 P.3d 431, 436 (Alaska 2002).

**9.** *Id.*

**10.** *Powers v. United Servs. Auto. Ass'n.,* 6 P.3d 294, 297 (Alaska 2000).

whistleblower claim. DOTPF responds that the arbitrator's decision should have preclusive effect because (1) Hammond submitted his whistleblower claim to arbitration and (2) Hammond's CBA-based arbitration claim that he was not terminated for just cause was so connected to his statutory whistleblower claim that "[i]t simply was not possible for the arbitrator to reach a conclusion on just cause without deciding the validity of Hammond's whistleblower claims."

■ Because we have not yet decided the precise issue before us today, we first look to federal law for guidance in determining whether Hammond's statutory claim was precluded by his arbitration of a similar claim under the CBA. We have previously found federal precedent to be persuasive in interpreting the preclusive effects of arbitration decisions under Alaska law.[11] In *Alexander v. Gardner–Denver Co.*,[12] the United States Supreme Court held that an arbitrator's decision pursuant to a CBA should not have preclusive effect in a subsequent lawsuit asserting rights guaranteed by statute. The Court held that an employee's submission of a claim that his termination violated his CBA's nondiscrimination clause did not foreclose his right to a trial on whether his discharge violated Title VII of the Civil Rights Act of 1964.[13] *Gardner–Denver* recognized that Title VII demonstrated a congressional "intent to accord parallel or overlapping remedies against discrimination," suggesting "that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement."[14] The Supreme Court went on to state that

the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment prac-

tices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo. The arbitral decision may be admitted as evidence and accorded such weight as the court deems necessary.[15]

*Gardner–Denver's* protection of an employee's right to fully and independently pursue both a grievance based upon the CBA and a lawsuit based upon the violation of statutory rights has been qualified, but preserved, by subsequent cases.

In *Gilmer v. Interstate/Johnson Lane Corp.*,[16] the United States Supreme Court held that a claim under the Age Discrimination in Employment Act of 1967 "can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application."[17] In *Gilmer* the employee had agreed to arbitrate his statutory claims and the Court held that this prior agreement required that preclusive effect be given to the arbitrator's decision on the statutory claims. *Gilmer* distinguished *Gardner–Denver* because in *Gardner–Denver* "the employees ... had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, [so] the arbitration ... understandably was held not to preclude subsequent statutory actions."[18] Significantly, *Gilmer* recognized that "because the arbitration in [the *Gardner–Denver* line of] cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to [Gilmer's claim]."[19]

---

**11.** See *Barnica v. Kenai Peninsula Borough Sch. Dist.*, 46 P.3d 974 (Alaska 2002); *Anchorage Police Dep't Employees Ass'n v. Feichtinger*, 994 P.2d 376 (Alaska 1999).

**12.** 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

**13.** *Id.* at 38, 94 S.Ct. 1011 (citing 42 USC § 2000e, *et seq.*).

**14.** *Id.* at 47, 49, 94 S.Ct. 1011.

**15.** *Id.* at 59–60, 94 S.Ct. 1011.

**16.** 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

**17.** *Id.* at 23, 111 S.Ct. 1647.

**18.** *Id.* at 35, 111 S.Ct. 1647.

**19.** *Id.*

The United States Supreme Court recently recognized the tension between *Gardner–Denver* and *Gilmer* in *Wright v. Universal Maritime Service Corp.*, a case in which the Court held that the CBA did not waive the employee's right to bring statutory employment discrimination claims in court.[20] *Wright* recognized that *Gilmer* supported the proposition that "federal forum rights cannot be waived in union-negotiated CBA's even if they can be waived in individually executed contracts" while also noting that the growing acceptance of arbitration has undermined *Gardner–Denver's* prohibition on union waiver of an employee's right to a judicial forum.[21] *Wright* eventually declined to resolve this tension, instead finding that if a union has the right to waive its members' statutory rights, "such a waiver must be clear and unmistakable" and concluding that the CBA in that case did not meet this standard.[22]

We have previously addressed the effect of arbitration on subsequent statutorily based claims in three cases. In *Public Safety Employees Ass'n v. State*,[23] (*PSEA I*) we held that a union member's right to sue as a tenant under the Uniform Residential Landlord Tenant Act (URLTA)[24] "cannot be prospectively bargained away."[25] Though that decision was predicated in part on the URLTA's explicit non-waiver provision,[26] we later stated in *Public Safety Employees Ass'n v. State*[27] (*PSEA II*) that *PSEA I* "rejected the argument that the availability of arbitration precludes statutory remedies."[28] However, *PSEA I* and *PSEA II* did not address the question whether a party can trigger preclusion of statutory claims by submitting that claim, or a similar claim involving common issues, to arbitration. This question was also left unresolved by *Barnica v. Kenai Peninsula Borough School District*,[29] in which four

members of this court were equally divided on the question whether a CBA that mandated arbitration of discrimination claims could prevent an employee who did not use the arbitration procedure from bringing a statutory discrimination claim in court. Two members of the court relied on *Gilmer* in concluding that "a claim subject to an agreement to arbitrate for which an independent statutory judicial remedy is also available must be arbitrated, unless the history and structure of the statute in question indicate that the legislature intended to preclude waiver of the judicial remedy in favor of the arbitral forum."[30] Under this approach, arbitration of such a claim would have preclusive effect on a subsequent state court claim. Two other members disagreed, citing *Gardner–Denver's* unequivocal holding that "a CBA could not collectively bargain away a worker's individual right to a statutory judicial remedy" and noting that at least some of this protection survived *Gilmer*.[31] They focused on *Wright*, which held that a CBA must incorporate a "clear and unmistakable" waiver of a statutory claim in order to preclude an employee from bringing a statutory claim in state court.[32] Implicit in this approach is the idea that, absent a clear waiver, an employee has a right both to arbitrate a claim under a CBA and to litigate a related, independent statutory claim in state court.[33]

We now adopt this approach and hold that an employee's exercise of the right to arbitrate under a CBA does not preclude subsequent litigation of related statutory claims in state court unless the employee clearly and unmistakably submits the statutory claims to arbitration. An employee is not required to choose between the rights provided by a CBA and the rights provided by statutes such as the Alaska Whistleblower Act; ab-

**20.** 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998).

**21.** *Id.* at 77, 119 S.Ct. 391.

**22.** *Id.* at 80, 119 S.Ct. 391.

**23.** 658 P.2d 769, 774–75 (Alaska 1983).

**24.** AS 34.03.

**25.** 658 P.2d at 774–75.

**26.** AS 34.03.040(a).

**27.** 799 P.2d 315 (Alaska 1990).

**28.** *Id.* at 323.

**29.** 46 P.3d 974 (Alaska 2002).

**30.** *Id.* at 977.

**31.** *Id.* at 983.

**32.** *Id.*

**33.** *Id.* at 984.

sent a clear and unmistakable waiver, the employee is entitled to both. Therefore, Hammond may pursue his statutory claims in state court unless he clearly and unmistakably waived those claims. We now must determine whether Hammond clearly and unmistakably waived his right to pursue these claims.

### 2. Hammond did not submit his Alaska whistleblower claims to arbitration.

■ Hammond argues that he did not knowingly, explicitly, and voluntarily submit his whistleblower claims to arbitration. Hammond notes that the arbitrator's authority was limited by the CBA to a determination of whether Hammond was fired for just cause, and he emphasizes that the arbitrator characterized the issue before her as whether "the employer violate[d] the Collective Bargaining Agreement in its dismissal of Mr. Hammond." Hammond also contends that his union did not give him notice that he would lose his right to pursue his statutory claim and that in any case the union did not have the authority to waive his right to pursue statutory claims in court.

DOTPF responds that Hammond submitted to arbitration his statutory whistleblower claims as a necessary part of his CBA-based claim that he was not terminated for "just cause." DOTPF generally alleges that Hammond's handling of his arbitration claim amounted to a voluntary submission to arbitration of his statutory whistleblower claims because it was necessary for the arbitrator to determine whether Hammond's accusations were made in "good faith" in order to determine whether DOTPF terminated him for "just cause." DOTPF also notes Hammond's own acknowledgment that this case involves the same facts, or issues, as the previous arbitration. Finally, as proof that Hammond explicitly submitted his statutory claims to arbitration, DOTPF points to the arbitrator's statement that the parties stipulated both that she had jurisdiction and that there were no issues about what was arbitrable.

There are three possible ways in which Hammond could have clearly and voluntarily submitted to arbitration so as to preclude subsequent litigation of his statutory whistleblower claims in court. It is possible that (1) the CBA's mandatory arbitration procedure governing grievances concerning dismissal clearly and unmistakably submitted his statutory claims to arbitration, (2) Hammond voluntarily submitted his whistleblower claims to arbitration even though he was not bound to do so by the CBA, or (3) Hammond voluntarily submitted to arbitration the issues common to both his CBA and his statutory claims and is thus precluded from relitigating the issues. We hold that Hammond did not clearly and unmistakably submit his whistleblower claims to arbitration either through his CBA or through a separate agreement and we reject the idea that independent statutory claims can be precluded when an employee exercises his right to contest a necessary issue through CBA-mandated arbitration.

### a. The CBA's arbitration provisions did not waive Hammond's right to bring independent statutory whistleblower claims in court.

We accept the principle that an employee can waive at least some of the employee's rights to an independent trial of statutory claims in a judicial forum by working under a CBA that requires those rights to be resolved through arbitration. The question before us is whether the arbitration provisions of the CBA waived Hammond's right to bring an independent statutory whistleblower claim in court. We adopt *Wright's* "clear and unmistakable" standard in making this determination.

■ Four federal circuits have addressed the issue of what constitutes clear waiver of statutory rights in a CBA. The Second and Fourth Circuits have held that in order to clearly and unmistakably waive an employee's statutory rights a CBA must either (1) contain an arbitration clause including "a provision whereby employees specifically agree to submit all federal causes of action arising out of their employment to arbitration" or (2) contain "an explicit incorporation of the statutory anti-discrimination requirements in addition to a broad and general arbitration clause." [34] The Sixth Circuit,

---

**34.** *Rogers v. New York Univ.*, 220 F.3d 73, 76 (2d    Cir.2000). *See Carson v. Giant Food, Inc.*, 175

echoing the First Circuit, has afforded even more protection to employees, holding that "a statute must specifically be mentioned in a CBA for it to even approach *Wright's* 'clear and unmistakable' standard."[35] We adopt the less demanding test employed by the Second and Fourth Circuits.

Hammond's CBA does not manifest a clear and unmistakable waiver of his statutory claims. Instead, it explicitly limits the grievance-arbitration procedure to "any controversy or dispute involving the application or interpretation of the terms of this Agreement arising between the Union or an employee or employees and the Employer." Though the CBA goes on to provide that "[q]uestions of arbitrability shall be decided by the arbitrator," granting to the arbitrator the power to decide questions of arbitrability does not approach the clear and unmistakable waiver standard. No portion of the CBA's grievance-arbitration section provided Hammond with any indication that he would forfeit his right to pursue statutory remedies in state court. Because Hammond's CBA did not contain a clear and unmistakable waiver of his statutory claims, his unsuccessful arbitration does not preclude him from litigating these claims in state court.

We need not decide whether a union-negotiated CBA can waive an employee's right to an independent determination of claims under the Alaska Whistleblower Act in state court because DOTPF presents no evidence that the CBA at issue in this case contained language clearly and unmistakably waiving such a right.[36]

F.3d 325, 331–32 (4th Cir.1999).

**35.** *Bratten v. SSI Services, Inc.,* 185 F.3d 625, 631 (6th Cir.1999). *See Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 9 (1st Cir.1999).

**36.** *See Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70, 80, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998) (stating that "we find it unnecessary to resolve the question of the validity of a union-negotiated waiver, since it is apparent to us, on the facts and arguments presented here, that no such waiver has occurred"). *Cf. Norcon, Inc. v. Kotowski,* 971 P.2d 158, 165 (Alaska 1999) (holding that "[t]he right to a non-discriminatory workplace conferred ... by AS 18.80.220 could

### b. Hammond did not voluntarily submit his statutory whistleblower claims to arbitration.

We next consider DOTPF's argument that Hammond voluntarily submitted his statutory whistleblower claims to arbitration by the manner in which he handled the arbitration. DOTPF relies heavily upon *Nghiem v. NEC Electronic,*[37] in which the Ninth Circuit held that an employee who had submitted wrongful termination, race discrimination, and antitrust claims against his former employer to arbitration was precluded from pursuing similar statutory claims in federal court.[38] In rejecting the employee's claim to a separate statutory action, *Nghiem* stated that "[o]nce a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority."[39] DOTPF relies on *Nghiem* to support its assertion that "one who voluntarily submits a claim to an arbitrator with binding and final authority waives any right to then challenge the authority of the arbitrator to act on a statutory claim after receiving an unfavorable result."

We agree with DOTPF that an employee who voluntarily submits claims to arbitration, although not required to do so by the CBA, would be precluded from bringing a subsequent statutory claim in court. This is so because an employee can voluntarily agree with his or her employer to resolve a statutory claim through arbitration, as "arbitration is 'essentially a creature of contract ... in which the parties themselves charter a private tribunal for the resolution of their disputes.' "[40] Moreover, voluntary submission of a statutory claim to arbitration can be inferred when employees are in full control of their representation.[41] But a different result

not be waived by any contrary contractual provision").

**37.** 25 F.3d 1437 (9th Cir.1994).

**38.** *Id.* at 1439.

**39.** *Id.* at 1440.

**40.** *Ahtna, Inc. v. Ebasco Constructors, Inc.,* 894 P.2d 657, 660 (Alaska 1995) (quoting *Nizinski v. Golden Valley Elec. Ass'n,* 509 P.2d 280, 283 (Alaska 1973)).

**41.** *See Nghiem,* 25 F.3d at 1440.

obtains when an employee does not voluntarily submit a claim to arbitration. When an employee is required to submit a claim to arbitration pursuant to a CBA, the employee's intent to preclude subsequent statutory claims in state court cannot be inferred from such mandatory submission alone. And when arbitration is controlled by the union as a result of the CBA, the employee's submission to arbitration must be "clear and unmistakable." [42] As a review of the facts discloses, no such "clear and unmistakable" agreement to arbitrate Hammond's statutory claims occurred in this case.

Hammond's references to the statutory protection provided by the Alaska Whistleblower Act were insufficient to submit his statutory claims to arbitration and thus preclude his right to litigate those claims in state court. To the contrary, Hammond clearly did not intend to submit his statutory whistleblower claim to arbitration. Hammond's union representative understood that he was not arbitrating Hammond's statutory claims, as he stated in his affidavit that

> the union was limited in its approach and would not be representing Mr. Hammond in bringing any whistleblower action.... The whistleblower issue was not tried in the arbitration.... At all times I made it clear that we were only arbitrating Mr. Hammond's rights arising under the Collective Bargaining Agreement.... It came as a complete surprise to me that the arbitrator did not limit her decision to her jurisdiction; i.e., just cause under the CBA, but that she instead attempted to make whistleblower findings.

The union representative's understanding of the scope of the arbitration is supported by the arbitrator's statement, made at the start of the proceeding, that the parties "stipulated that the issue before the Arbitrator was ['D]id the employer violate the Collective Bargaining Agreement[?']" [43] Additionally, though DOTPF is correct that the affidavit of Hammond's former attorney provides evidence that Hammond was aware that arbitration might *impact* his statutory claims, the affidavit does not demonstrate that Hammond had any idea that his arbitration would *preclude* his statutory claims. The affidavit indicates only that Hammond and his attorney discussed the potential implications of arbitration on Hammond's subsequent testimony and his potential recovery for the statutory claim; it does not demonstrate that Hammond intended the arbitration to have preclusive effect on his statutory claim. Hammond did not clearly and unmistakably submit his statutory claims to arbitration by the manner in which he presented his CBA-based termination claim to arbitration.

### c. Hammond's statutory whistleblower claim are not precluded by resolution of common issues in the arbitration of his termination claim under the CBA's mandatory arbitration provision.

Finally, DOTPF argues that Hammond's statutory whistleblower action is precluded because, in the words of the superior court, "Hammond raised the whistleblower claim at the arbitration and, by framing his claim as retaliation, *required* the arbitrator to rule on the whistleblowing issue." DOTPF is correct that Hammond understood that the whistleblower issue would be part of the arbitration because his grievance stated that "[t]ermination of employment was without just cause. Grievant was denied overtime in retaliation for 'blowing the whistle' and exercising rights as otherwise specified in law." In his briefing to this court, Hammond acknowledges that the arbitration proceedings and whistleblower action involved the same underlying facts. But while Hammond clearly and unmistakably submitted to arbitration

---

42. Given that a union's waiver of independent judicial determination of statutory rights must be explicit in a CBA, *Wright*, 525 U.S. at 80, 119 S.Ct. 391, an employee's subsequent waiver of those rights through union representation in CBA-mandated arbitration of contractual grievances must be equally explicit. In this case, Hammond's CBA provided that the union, rather than the employee, controls the arbitration of the employee's claim. Accordingly, in asserting preclusion, DOTPF has the burden of proving that the employee, rather than the union, made a clear and unmistakable waiver of his own statutory rights.

43. The narrow scope of this stipulation cannot support DOTPF's contention that Hammond submitted his statutory claim to arbitration. The agreement that there were no arbitrability issues was predicated on the earlier agreement that the arbitrator was only deciding whether DOTPF had violated the CBA.

*issues* that were essential to his statutory action, he is not precluded from relitigating these issues in a subsequent statutory action because he did not submit his statutory *claims* to arbitration.

Hammond's arbitration was conducted pursuant to his CBA. This fact is particularly significant in light of federal precedent on this subject. *Gardner–Denver* established that the CBA determines the preclusive effects of arbitration when it noted that

> the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under title VII. The federal court should consider the employee's claim de novo.[44]

In distinguishing *Gardner–Denver, Gilmer* held that preclusion can only be triggered by the submission of a statutory *claim* to arbitration, and not by the submission of a CBA-based claim that merely has an issue in common with a statutory claim. In *Gilmer,* the Court stated:

> Since the employees [in the *Gardner–Denver* line of cases] had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions.[45]

The Sixth Circuit reached a similar conclusion in *Kennedy v. Superior Printing Co.,*[46] holding that an employee was not precluded from bringing statutory discrimination claims in state court by an arbitrator's dismissal of his CBA-based discrimination claim.[47] In

that case the employee claimed in arbitration that the employer had violated the statutory protections of the Americans with Disabilities Act (ADA)[48] as well as his CBA's anti-discrimination provision.[49] The Sixth Circuit held that the employee's statutory claims were not precluded by his arbitration of common issues:

> The burden was on Superior to show that Kennedy waived his *statutory* rights, not merely that he arbitrated a discrimination claim under a collective bargaining agreement that also had a basis in federal law. Superior has not met this burden. There was no written agreement providing that Kennedy would submit his ADA statutory claims to binding arbitration.[50]

Just as it was "not at all unreasonable or surprising that Kennedy and the arbitrator would discuss the ADA in the context of arbitrating a dispute involving a claim that the company violated the anti-discrimination clause of the [CBA] prohibiting disability discrimination,"[51] it is not unreasonable that Hammond would refer to the protection of the Alaska Whistleblower Act when contesting whether he was terminated for "just cause" under a CBA that did not define that phrase.

Federal protection of an employee's right to litigate statutory claims in court despite the unfavorable resolution of common issues in arbitration is a persuasive model for Alaska. While we recognize that, similar to the federal policy favoring arbitration, "[t]he common law and statutes of Alaska evince 'a strong public policy in favor of arbitration,' "[52] this policy does not outweigh Alaska's strong public policy against allowing anyone but the employee to waive the employee's right to statutory protections. A

44. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (noting that arbitral decision may be admitted as evidence and given whatever weight court finds appropriate).

45. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

46. 215 F.3d 650 (6th Cir.2000).

47. *Id.* at 655.

48. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (1994 ed. and Supp. V).

49. *Kennedy,* 215 F.3d at 655.

50. *Id.*

51. *Id.*

52. *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n,* 732 P.2d 1090, 1093 (Alaska 1987) (quoting *Univ. of Alaska v. Modern Constr., Inc.,* 522 P.2d 1132, 1138 (Alaska 1974)).

statutory grant of rights provides an employee with the right to fully litigate claims based upon those rights. Granting preclusive effect to arbitration proceedings mandated by a CBA and negotiated by the employee's union—rather than the employee—would, in the absence of a clear and unmistakable submission of the statutory claim to arbitration, unacceptably diminish these statutory rights.[53] Accordingly, we preserve the distinct statutory remedies to which an employee is entitled under Alaska law by denying preclusive effect to a prior CBA-based arbitration involving similar issues unless the employee clearly and unmistakably submits his or her statutory *claims* to arbitration. Because Hammond did not submit his statutory whistleblower claims to arbitration, he may litigate all aspects of those claims in state court free of any preclusive effect of the arbitrator's decision and regardless of whether his CBA-based grievance implicated whistleblower issues.

**B. Summary Judgment Was Not Appropriate, Despite the Arbitration's Significant Evidentiary Value, Because Hammond Presented Sufficient Evidence that His Firing Was Retaliatory To Meet the Low Summary Judgment Threshold.**

DOTPF contends that the superior court's decision "could readily have been made in reliance on the arbitrator's decision as establishing the absence of any genuine dispute as to the facts material to Hammond's termination." We agree with DOTPF that an arbitrator's decision can be admitted as evidence in a subsequent proceeding.[54] Nonetheless, even if the arbitrator's decision is accorded great weight, the presence of strong evidence is an insufficient basis upon which to grant summary judgment if the party opposing the motion has presented a genuine issue of material fact.[55] It is well established that "the evidentiary threshold necessary to preclude an entry of summary judgment is low." [56]

Hammond presented sufficient evidence to meet this low threshold. This burden is met by Hammond's testimony concerning his various complaints about the Homer Gravel Roads Project and Project Engineer Duane Paynter's testimony that he was livid that Hammond complained outside of the chain of command. Additionally, the Division of Legislative Audit (DLA) released a report after the arbitrator's decision which may be admissible as evidence in Hammond's statutory whistleblower action. The DLA report found that Hammond's claims had merit, and it called into question the independence of Richard Kerns, who was selected by DOTPF to investigate Hammond's allegations.[57] When taken together, this evidence presents

---

**53.** We note that this establishes a somewhat different analytical framework than the traditional doctrines of *res judicata* and collateral estoppel, which the superior court relied upon in dismissing Hammond's statutory claims. The traditional notions of *res judicata,* or claim preclusion, and collateral estoppel, or issue preclusion, are inapplicable to this case. Instead, the key inquiry is whether the statutory claim was submitted to arbitration, because granting any preclusive effect to the arbitration in the absence of Hammond's clear and unmistakable waiver of his statutory claim would deny Hammond the full protection of his two distinct remedies.

**54.** *See Alexander v. Gardner–Denver,* 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (stating that "the federal court should consider the employee's claim de novo" despite previous unfavorable arbitral decision, but that "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate").

**55.** *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1032–33 (Alaska 2002). *See also Bell v. Conopco,*

186 F.3d 1099, 1102 (8th Cir.1999) (employee's "evidence, even if weak, must be viewed in a light most favorable to [the employee].... The [arbitral] decision may be received at trial, a jury may give it great weight. But in summary judgment proceedings, neither the district court nor we may place the parties' competing evidence in a balance scale when deciding whether to grant summary judgment.").

**56.** *John's Heating,* 46 P.3d at 1032. *See also Meyer v. State, Dep't of Revenue, Child Support Enforcement Div. ex rel. N.G.T.,* 994 P.2d 365 (Alaska 1999) (holding that putative father's affidavit that he had not had intercourse with mother at probable time of conception was sufficient to create question of fact as to whether DNA test indicating 99.98% probability of paternity was accurate).

**57.** Kerns's report takes on added significance because the DLA report found that the arbitrator "relied heavily on the findings of Mr. Kerns."

genuine issues of material fact as to whether Hammond was fired for protected whistle-blowing activities. We conclude that summary judgment should not have been granted to DOTPF.[58]

## V. CONCLUSION

The arbitrator's decision should not have been given preclusive effect and summary judgment should not have been granted against Robert Hammond because Hammond did not clearly and unmistakably submit his statutory whistleblower claims to arbitration. Accordingly, we REVERSE the superior court's decision and REMAND so that Hammond may litigate his statutory whistleblower claims.

MATTHEWS, Justice, with whom EASTAUGH, Justice, joins, dissenting.

I disagree with today's opinion insofar as it holds that Hammond may litigate twice the question whether the accusations that he made against his employer were in good faith, that is, with a reasonable basis for believing them to be true.

One of the grounds the state relied on for firing Hammond was that he made unfounded attacks on the integrity and competence of DOTPF staff that undermined the department's ability to carry out its mission. To succeed in his challenge to his firing, Hammond had to establish that he acted in good faith with a reasonable belief that his accusations were true. This question was litigated in the seven-day arbitration proceeding and it was resolved against him. The same question is critical to his claim under the Whistleblower Act because the act does not protect those whose reports are not made in good faith.[1] Unless the arbitration proceedings were unfair in some fundamental way, I believe that Hammond should be precluded from relitigating the same question in his claim under the Whistleblower Act.

The norm in our legal system is that a litigant is entitled to litigate a question only once. The doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are "founded upon the principle that parties ought not to be permitted to litigate the same issue more than once and that when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties...."[2] A valid arbitration award generally has the same preclusive effect as a court judgment.[3] Today's opinion declines to apply this rule on the ground that doing so would unacceptably diminish Hammond's right to sue under the Whistleblower Act. I disagree because I see no indication in the Whistleblower Act that the legislature intended to deviate from the established norm that a litigant gets only one bite at the apple.[4]

It is important to note that the procedures under which Hammond litigated the question whether his firing was justified are mandated by statute. Hammond was a state employee whose employment was governed by a collective bargaining agreement regulated by the Public Employment Relations Act, AS 23.40.070 et seq. Under PERA, collective bargaining agreements must include a grievance procedure "which shall have binding arbitration as its final step."[5] Allowing an employee to relitigate against an employer questions that have already been determined in binding arbitration destroys the finality of the PERA-mandated arbitration remedy. Further, doing so permits inconsistent results, and is costly and inefficient.

58. Because we are reversing the superior court's dismissal of Hammond's statutory whistleblower action, we do not need to reach Hammond's other arguments.

1. AS 39.90.110(a)(2) provides: "A person is not entitled to the protections under AS 39.90.100–39.90.150 unless the person ... (2) reports the information in good faith."

2. State v. Baker, 393 P.2d 893, 897 (Alaska 1964).

3. See RESTATEMENT (SECOND) OF JUDGMENTS § 84(1).

4. See Bignell v. Wise, 720 P.2d 490, 494 (Alaska 1986) ("The same considerations of efficiency and fairness that limit civil plaintiffs to 'one bite of the apple' apply equally to workers' compensation proceedings.").

5. AS 23.40.210(a).

Some of the differences between my views and those of today's opinion are reflected in the two opinions in *Barnica v. Kenai Peninsula Borough School District*,[6] a case decided by an evenly divided court.[7] The dispositional opinion, which I wrote and in which Justice Eastaugh joined, held that "a claim subject to an agreement to arbitrate for which an independent statutory judicial remedy is also available must be arbitrated, unless the history and structure of the statute in question indicate that the legislature intended to preclude waiver of the judicial remedy in favor of the arbitral forum."[8] Justice Bryner, in an opinion joined by Justice Carpeneti, dissented, taking the view that a statutory right to a judicial forum can only be waived by a provision in a collective bargaining contract that contains a "clear and unmistakable waiver."[9]

In *Barnica* the collective bargaining agreement explicitly barred discrimination on the basis of sex.[10] But Barnica proceeded directly to court on his sex discrimination claim without using the grievance and arbitration procedures of the collective bargaining agreement.[11] The dispositional opinion held that he was barred from pursuing his judicial remedy because he failed to exhaust his remedies under the collective bargaining agreement.[12] The present case differs in two respects. Protection of whistleblowers is not explicitly built into the collective bargaining contract, and Hammond, unlike Barnica, did exhaust his contract remedies. These differences are potentially important. One might say that Hammond had no duty to grieve and arbitrate his dismissal as a precondition to suit on his whistleblower claim, reasoning along the lines of the dissent in *Barnica* that the collective bargaining agreement must contain a clear and unmistakable waiver of the right to a judicial forum on a statutory claim.[13] That position would nonetheless be consistent with the view that when the right to arbitration is actually exercised and an issue common to the claim being arbitrated and the statutory claim is determined, the issue cannot be relitigated because of established legal norms precluding litigation of an issue more than once. For this reason this case presents a stronger claim for preclusion than *Barnica*.

But most of the reasons given in the dispositional opinion in *Barnica* also apply to this case. Briefly summarized, they are as follows. The legislature mandated binding arbitration in PERA; that procedure is in no sense a second-class remedy subordinate to the judicial remedy provided under the act in question.[14] Further, we recognized that the "common law and statutes of Alaska evince 'a strong public policy in favor of arbitration' "[15] and that arbitration compared to litigation is a "relatively inexpensive and expeditious method of dispute resolution."[16] The dispositional opinion rejected the *Alexander v. Gardner–Denver Co.*[17] line of cases in favor of the more recent *Gilmer v. Interstate/Johnson Lane Corp.*[18] approach and declined to find that "the distinction between collective bargaining contracts [as in *Gardner–Denver*] and individual contracts [as in *Gilmer*] is necessarily meaningful with respect to the treatment of arbitration claus-

**6.** 46 P.3d 974 (Alaska 2002).

**7.** A decision by an evenly divided court results in an affirmance. The opinion agreeing with the result reached by the superior court is referred to as the dispositional opinion, but it does not have the precedential effect of an opinion of the court. *Anderson v. State ex rel. Central Bering Sea Fishermen's Ass'n*, 78 P.3d 710, 713 (Alaska 2003).

**8.** *Barnica*, 46 P.3d at 977.

**9.** *Id.* at 983.

**10.** *Id.* at 975.

**11.** *Id.*

**12.** *Id.* at 977.

**13.** *Id.* at 983.

**14.** *Id.* at 977–78.

**15.** *Id.* at 978 (citing *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987) (quoting *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1138 (Alaska 1974))).

**16.** *Id.* at 978.

**17.** 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

**18.** 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

es." [19] Finally, the dispositional opinion noted that "an employee's state constitutional right to a pretermination hearing could be waived in a collective bargaining agreement so long as the remedy substituted by the collective bargaining agreement was 'fair, reasonable and efficacious.' " [20] "[I]f constitutionally mandated remedies may be waived by alternative grievance/arbitration procedures, statutory remedies likewise may be subject to waiver because of such procedures." [21]

As I have suggested, the legislature has the right and power to provide that facts essential to whistleblower claims cannot be resolved in PERA-mandated arbitration. But there is no indication in the text or history of the act that this was intended, nor is there an inherent conflict between arbitration and the purposes of the Whistleblower Act. Thus there is no reason not to adhere to the norm that a party is entitled to litigate an issue only once.

One of Hammond's defenses to the state's motion for summary judgment was that the arbitration proceedings were fundamentally unfair because of discovery deficiencies, because he was poorly represented, and because he was denied the opportunity to be represented by his own attorney or to represent himself. Arbitration awards should not be given preclusive effect if they lack the essential elements of fair adjudication.[22] The superior court did not address this issue in its decision granting summary judgment. I would remand this case for that purpose. If the issue were resolved in Hammond's favor,

his suit could proceed. If it were resolved in favor of the state, the question of the good faith of Hammond's accusations could not be litigated a second time.

---

**19.** *Barnica,* 46 P.3d at 980. We noted that individual contracts are often contracts of adhesion offered on a take-it-or-leave-it basis, while collective bargaining contracts are usually the product of bilateral negotiations and are therefore at least as fair to employees as standard individual employment contracts. A recent journal article makes the same point more strongly:

> Individual employees' lack of bargaining power when compared to that of union members draws into question the relevance of the *Gilmer* Court's distinction between union and nonunion arbitration agreements. The arbitration provision at issue in *Gardner–Denver* was negotiated by the employer and the union selected by a majority of the plaintiff's co-workers. The union, like the employer, was likely a repeat player "with an equivalent insight into arbitration and the operations of the workplace," and with the experience and

knowledge necessary to draft a fair arbitration agreement. By comparison, the individual employee in *Gilmer* had to sign a contract in which he had little, if any, input. If the Court were to enforce the arbitration clause in either of the two cases, it should have enforced the one in *Gardner–Denver*.

Erica F. Schohn, *The Uncertain Future of Mandatory Arbitration of Statutory Claims in the Unionized Workplace,* 67 Law & Contemp. Probs. 321, 327 (Winter/Spring 2004) (footnotes omitted).

**20.** *Id.* at 981 (quoting *Storrs v. Municipality of Anchorage,* 721 P.2d 1146, 1150 (Alaska 1986)).

**21.** *Id.*

**22.** *See* Restatement (Second) of Judgments §§ 84(3)(b); 83(2)(a-e).